IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

STEVEN M. MAYHEW,
    Plaintiff,

v.                                               Case No. 3:10cv511/MCR/EMT

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
    Defendant.
_____/

**O R D E R**

This cause is before the court upon a Motion for Vocational Rehabilitation Examination (Doc. 13), filed by Defendant State Farm Mutual Automobile Insurance Company (hereinafter "State Farm"), and a response in opposition thereto (Doc. 19), filed by Plaintiff Steven M. Mayhew (hereinafter "Mayhew").

Relevant to the instant dispute are the following allegations contained in Mayhew's complaint: (1) on or about February 26, 2009, Mayhew was driving an automobile and was involved in an accident with another vehicle; (2) at the time of the accident, Mayhew was insured under two policies of automobile insurance issued by State Farm, including an uninsured and under-insured motorist policy; (3) as a result of the accident, in which Mayhew was not at fault, Mayhew was "seriously injured resulting in pain and suffering, disfigurement, disability, loss of capacity for the enjoyment of life, <u>emotional and mental anguish</u>, loss of income and ability to earn income, expense of medical care and treatment and aggravation of pre-existing condition"; and (4) the at-fault driver was uninsured or under insured, and Mayhew made an "uninsured motorist claim" against State Farm (doc. 1-1)[1] (emphasis added). In the instant action, Mayhew seeks from State Farm—under his uninsured and under-insured automobile insurance policy—excess damages, costs, and any other relief the court may deem just and proper (*id.*).

---

[1] The page references used in this order reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

In support of his claim for damages Mayhew retained Leslie Gillespie, a vocational consultant, to perform a vocational assessment and testify as an expert witness. Upon being retained, Ms. Gillespie reviewed medical records related to Mayhew's accident and questioned Mayhew, in relevant part, about his physical symptoms, activities of daily living, medications, educational background, employment history, and vocational goals (*see* doc. 13-2). Ms. Gillespie then created a written report, in which she offered opinions concerning Mayhew's rehabilitation options and earning capacity (*id.*). Mayhew also retained Andrew Kent, an attorney and certified business appraiser, to offer opinions regarding Mayhew's loss of personal or business income as a result of injuries sustained in the accident (doc. 13-3). Mr. Kent opined in a written report that the present value of Mayhew's damages for past lost wages, impaired earning capacity, and costs associated with vocational training exceed $1,000,000.00 (*id.*).

In the motion at bar, State Farm seeks an order compelling Mayhew to undergo an examination by Michael Shahnasarian, Ph.D., a psychologist and vocational expert retained by State Farm.[2] State Farm estimates that the proposed examination would take approximately seven hours and would include an evaluation of Mayhew's "mental functioning, occupational interests, and personality," as well as a three-hour (approximate) interview of Mayhew (doc. 13 at 3). More specifically, and relevant to the instant dispute, Dr. Shahnasarian intends to interview Mayhew regarding "mental health problems and concerns" and administer a "battery of standardized tests," including tests designed to "provide [an] objective measure of [Mayhew's] personality functioning [and] general mental functioning" (doc. 13-5 at 2).[3] Mayhew has no objection to undergoing a vocational assessment by Dr. Shahnasarian, but he objects to the proposed scope of the assessment. More particularly, Mayhew asserts that he should not be required to undergo psychological,

---

[2] Dr. Shahnasarian is a certified rehabilitation counselor, certified vocational evaluator, certified career counselor, licensed psychologist, and licensed mental health counselor (*see* doc. 13-5).

[3] These tests include the Shipley Institute of Living Scale, a test which estimates I.Q.; the Multidimensional Aptitude Battery VI, another test which estimates I.Q.; a Self Directed Search—Form R or Form E, which evaluates career interests; and the Grooved Pegboard test, which evaluates physical dexterity (*see* doc. 13-5 at 2–3; doc. 19 at 4). Additionally, Dr. Shahnasarian states that "depending upon information that emerges during [his] examination of Mr. Mayhew," he may or may not administer the Minnesota Mutliphasic Personality Inventory 2 (MMPI -2), a test typically administered by psychologists to evaluate one's personality (*id.*).

intelligence, or personality testing because his mental condition is not "in issue" (*see* doc. 19 at 7–11).

      Rule 35 of the Federal Rules of Civil Procedure provides, in relevant part that:

> The court where the action is pending may order a party whose mental or physical condition—including blood group—is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control.

Fed. R. Civ. P. 35(a)(1).

      The issue before the court, thus, is whether Mayhew has placed his mental condition in controversy, such that the full scope of Dr. Shahnasarian's proposed examination is warranted. In support of its position that such an examination is warranted, State Farm: (1) points to the allegations of mental and emotional anguish in Mayhew's complaint, and (2) avers "it is clear based upon Plaintiff's contentions in this lawsuit and the evidence which he intends to offer at trial [i.e., the opinions of Ms. Gillespie and Mr. Kent] that he has placed his mental . . . condition along with his vocational status in controversy" (doc. 13 at 2, 4). Mayhew, on the other hand, asserts that "'garden variety claims of emotional distress'" do not warrant a highly invasive psychological evaluation, such as the one State Farm proposes should be conducted by Dr. Shahnasarian (doc. 19 at 8) (quoting Nathai v. Florida Detroit Diesel—Allison, Inc., 268 F.R.D. 398 (M.D. Fla. 2010)). Mayhew acknowledges, however, that a more limited examination, such as the one conducted by Ms. Gillespie, is appropriate (*see* doc. 19 at 10).

      In Schlagenhauf v. Holder, 379 U.S. 104, 85 S. Ct. 234, 13 L. Ed. 2d 152 (1964), the Court stated that the predicates for Rule 35(a):

> are not met by the mere conclusory allegations of the pleadings, nor by mere relevance to the case, but require an affirmative showing by the movant that each condition as to which examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination.

Schlagenhauf, 379 U.S. at 118, 85 S. Ct. 234. After careful consideration of the parties' positions and the materials before this court, the undersigned concludes that State Farm has failed to show good cause for compelling an examination of the scope it proposes.

      Initially, Mayhew has not alleged that the accident caused a mental disorder, mental disease, or psychological impairment; rather, he merely included in his complaint a garden variety claim of

mental anguish, and such garden variety claims do not establish good cause for an examination of that scope. *See id.* Additionally, the experts retained by Mayhew conducted no psychological testing and formed their opinions largely on objective criteria, such as medical records, past earnings, and costs associated with educational or vocational training.[4] Similarly, the reports prepared by Mayhew's experts reflect damage calculations based upon the same objective criteria and not in any way upon Mayhew's mental condition (*see* docs. 13-2, 13-3). Likewise, State Farm's first interrogatories included no questions regarding Mayhew's claim of mental and emotional anguish, and Mayhew's interrogatory responses—when viewed in their entirety—demonstrate that his damage claims are essentially based on his physical injuries (and limitations related thereto), medical expenses, and reduced earning potential (*see* doc. 13-1).[5] *Cf.*, Trenary v. Busch Entertainment Corp., No. 8:05-CV-1630-T-30EAJ, 2006 WL 3333621, at *3 (M.D. Fla. 2006) (mental examination warranted where plaintiff's complaint alleged mental anguish and loss of capacity to enjoy life and plaintiff's interrogatory answers revealed the identities of numerous doctors who had diagnosed or treated plaintiff for various mental conditions, including depression, anxiety, post traumatic seizure disorder, and post traumatic stress disorder).[6] It matters not that Mayhew's claims for damages also include a claim based on mental anguish or emotional distress. *See* Lahr v. Fulbright and Jaworski, L.L.P., 164 F.R.D. 204, 210 (N.D. Tex. 1996) (noting that most

---

[4] State Farm notes that Ms. Gillespie conducted an "in-depth" interview of Mayhew (*see* doc. 13 at 2; doc. 13-2). To the extent State Farm suggests that this justifies the full scope of the examination it proposes, the suggestion is not persuasive. It is clear from a review of Ms. Gillespie's report that she interviewed Mayhew to obtain directly from him a description of the accident, injuries, and medical treatment related thereto, as well as information concerning Mayhew's employment history, education, vocational goals, etc. (*see* doc. 13-2). She did not interview or test Mayhew to determine his intelligence, personality, or physical dexterity, although she did conduct two tests to measure "academic performance" and to what extent, if any, Mayhew's academic performance is affected by pain related to his injuries (*id.; see also* docs. 19-2, 21)).

[5] For example, in response to an interrogatory requesting a listing of expenses incurred as a result of the accident, Mayhew listed only expenses related to his physical condition; and in response to an interrogatory requesting a listing of all treating and examining physicians, Mayhew listed only medical doctors, ambulance and emergency room personnel, and physical therapists (*see* doc. 13-1 at 8–11).

[6] The undersigned recognizes that Trenary and the district court cases, discussed *infra*, are not considered binding precedent; thus, they are discussed only as persuasive authority.

Case No.: 3:10cv511/MCR/EMT

courts would not grant mental examinations in sexual discrimination cases where the injured party seeks compensatory damages for "mental anguish [only] associated with being the victim of discrimination" because a jury could judge a hostile work place environment objectively and assess a plaintiff's anguish without delving into a plaintiff's subjective psychological reaction). *See also, e.g.,* Nathai, 268 F.R.D. at 400 ("[a] plaintiff does not put his or her mental condition in controversy simply by seeking damages based on emotional distress.") (citing Ali v. Wang Laboratories, Inc., 162 F.R.D. 165, 167 (M.D. Fla. 1995) ("[The] plaintiff's "mental condition" within the meaning of Rule 35 is not necessarily placed in controversy merely because plaintiff seeks recovery for "emotional distress" . . . [because] a person with no 'mental condition' may still suffer emotional distress which is compensable."); Gray v. State of Florida, Dept. of Juvenile Justice, No. 3:06-cv-990-J-20MCR, 2007 WL 2225815, 2007 U.S. Dist. LEXIS 55236 (M.D. Fla. July 31, 2007) ("This is not a case where [p]laintiff simply claims emotional damages without more; rather, here, [p]laintiff has gone beyond asserting a mere claim for emotional distress in that she alleges her mental condition is ongoing and has been exacerbated by [d]efendant."); Robinson v. Jacksonville Shipyards, 118 F.R.D. 525 (M.D. Fla. 1988) ("Plaintiff does not place her mental condition in controversy by alleging that her psychological well being . . . is seriously affected by defendant's behavior."); Lahr, 164 F.R.D. at 210 (N.D. Tex. 1996)).

For the foregoing reasons, State Farm's motion is properly denied to the extent it seeks an order compelling Mayhew to undergo the full scope of the examination State Farm proposes should be conducted by Dr. Shahnasarian.

Accordingly, it is **ORDERED**:

Defendant's Motion for Vocational Rehabilitation Examination (Doc. 13) is **GRANTED in part and DENIED in part**, as follows: Dr. Shahnasarian may conduct a vocational evaluation of Plaintiff and interview Plaintiff in connection with the evaluation; Dr. Shahnasarian's evaluation and interview shall not include any form of psychological, intelligence, or personality testing; and the evaluation shall be limited to the same scope as the examination conducted by Leslie Gillespie.[7]

---

[7] It appears that Dr. Shahnasarian should be permitted to conduct the "Self Directed Search—Form R or Form E" test, as the parties have characterized this test as one designed to evaluate career interests, which is an area relevant to the purpose of Dr. Shahnasarian's examination and similar to areas considered by Ms. Gillespie in forming her opinions. Likewise, Dr. Shahnasarian should be permitted to administer the academic performance tests administered by Ms. Gillespie, if he so chooses.

Case No.: 3:10cv511/MCR/EMT

**DONE AND ORDERED** this 9th day of May 2011.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**